JUDGE KAPLAN          09 CV          4535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

AMERICAN AIRLINES, INC.,                       :
                                               :      Case No.: _____
                           Plaintiff,          :
                                               :      **PLAINTIFF'S MEMORANDUM**
            v.                                 :      **OF LAW IN SUPPORT OF**
                                               :      **TEMPORARY RESTRAINING**
                                               :      **ORDER AND PRELIMINARY**
CHARLES F. IMHOF,                              :      **INJUNCTION**
                                               :
                           Defendant.          :
                                               :
-------------------------------------------------------------X

     Plaintiff American Airlines, Inc. ("American") submits this memorandum of law in

support of its motion for a temporary restraining order and preliminary injunction enjoining

defendant Charles F. Imhof, a former American employee, from (1) violating the confidentiality

agreements contained in American's Standards of Business Conduct and other compensation

agreements by his proposed employment in a nearly identical position with one of American's

principal competitors, Delta Airlines, Inc. ("Delta"), and (2) revealing any of American's

confidential and proprietary information and trade secrets to Delta or any other person or entity.

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT    2

II.   FACTUAL BACKGROUND    4

III.  ARGUMENT    4

   A.   Second Circuit authority supports the issuance of a temporary
        restraining order and preliminary injunction    4

        1.   The Court should presume irreparable harm because
             Mr. Imhof misappropriated American's confidential
             and proprietary information and trade secrets    6

        2.   American will suffer irreparable harm if Mr. Imhof
             discloses or uses American's confidential and
             proprietary information and trade secrets    7

        3.   American is likely to succeed on the merits or has
             presented sufficiently serious questions on the merits
             to make them a fair ground for litigation    10

             a.   Mr. Imhof's misappropriation of American's
                  confidential, proprietary and trade secret
                  information violates American's Standards of
                  Business Conduct and his written agreements    11

             b.   American is likely to succeed on its mis-
                  appropriation and breach of contract claims
                  based upon the doctrine of inevitable disclosure    12

             c.   Mr. Imhof has breached his fiduciary duties
                  owed to American    14

             d.   Mr. Imhof has engaged in unfair competition
                  against American    15

        4.   The threatened injury to American outweighs any
             hardship to Mr. Imhof    16

        5.   The public interest favors granting the preliminary
             injunction    17

Page

B.    Security is not needed for the Preliminary Injunction          18

C.    Support for issuance of temporary restraining order without
      Notice                                                          19

IV.    CONCLUSION                                                     19

# I.  PRELIMINARY STATEMENT

Without the immediate issuance of a temporary restraining order, American will be irreparably harmed because one of its former employees is primed and ready to use and disclose confidential information (1) that he sent to a relative's e-mail address days before resigning, (2) that he copied from his company-issued computer (again, days before resigning), and (3) that he retains in his memory and cannot help but use to his and his new employer's benefit, and to American's detriment.  The requested relief is necessary and appropriate and will preserve the status quo, and the balance of the harms weighs heavily in American's favor.

Until April 28, 2009, Mr. Imhof had been an employee at American for 22 years. When Mr. Imhof tendered his resignation, he was a Managing Director and the highest-ranking employee in the New York Division of Passenger Sales.  In this position, Mr. Imhof was privy to—and developed—highly sensitive proprietary, confidential, and trade secret information, including marketing and business strategies, financial and pricing information, and customer and contractual information.  Passenger Sales is a key organization within American because it is a large revenue generator.  And New York is an important market to American and its business strategy.  The regions into which Passenger Sales was divided during Mr. Imhof's employment is indicative of this fact.  When Mr. Imhof resigned, Passenger Sales was divided into only four geographic regions:  Western, Central, Eastern, and New York.

Unbeknownst to American, in March 2009, Mr. Imhof entered into discussions to join Delta in a nearly identical position.  However, at no point before Mr. Imhof resigned did he indicate to anyone at American that he was thinking of leaving to join one of American's primary competitors in the New York market (and the world).  Instead, he continued to conduct business for American and participate in meetings where he received and discussed highly

2

sensitive competitive information. Moreover, as his discussions with Delta heated up and term sheets were exchanged on April 23, 2009, Mr. Imhof sent highly competitively sensitive information—a 115-page color PowerPoint presentation entitled, "New York Passenger Sales," and an accompanying e-mail—to an outside e-mail address, marialimhof@optononline.net. In addition, on April 24, 2009, Mr. Imhof deleted and/or downloaded more than 2,000 files from his American-issued computer. Although many of these files were personal, some were key strategy documents and contracts that American would not want Mr. Imhof or its competitors to either have or use.

Mr. Imhof continued to delete and download competitively sensitive documents from his American-issued computer during the next several days—even after he resigned from American on April 28, 2009—until he turned in his computer on April 29, 2009. Forensic analysis reveals that the sensitive information Mr. Imhof downloaded included such documents as the "2009 NY Division Business Plan," dated October 30, 2008, which discusses American's business objectives and strategies in the New York market for 2009 in detail.

Mr. Imhof's actions were contrary to (1) American's policies, such as its Standards of Business Conduct, (2) Mr. Imhof's agreements with the company, and (3) the law. His actions further are indicative of his intent to unfairly and illegally use American's confidential, proprietary, and trade secret information on behalf of one of its primary competitors and to American's detriment.

Moreover, by failing to excuse himself from meetings before he resigned, Mr. Imhof maintains in his memory unique knowledge and specialized information that he cannot help but use in his intended employment with Delta—a position that is virtually identical to that which he held at American. A temporary restraining order and injunction, therefore, is

3

necessary to preserve the status quo, to protect American's confidential, proprietary, and trade secret information, and to prevent Mr. Imhof from further breaching his contractual, common law, and fiduciary obligations to American.

## II. FACTUAL BACKGROUND

The relevant facts are set forth in the accompanying Declaration of Kurt Stache, dated May 12, 2009 ("Stache Decl."), and the Declaration of Andy Gandhi, dated May 12, 2009 ("Gandhi Decl."), both filed contemporaneously herewith, along with accompanying exhibits.

## III. ARGUMENT

American is entitled to a temporary restraining order and a preliminary injunction. Indeed, injunctive relief is necessary to prevent Mr. Imhof from revealing American's confidential and proprietary information and trade secrets to Delta or any other person or entity, which would violate his agreements with American, American's Standards of Business Conduct, Delta's Code of Conduct, and the law. If Mr. Imhof is not enjoined, American will suffer immediate and irreparable harm from the resulting damage to its goodwill and business relationships and compromise of its most sensitive confidential, proprietary, and trade secret information. The harm that American will suffer outweighs any hardship to Mr. Imhof, who was highly compensated in exchange for his agreement to the confidentiality provisions he is now attempting to violate. Furthermore, American is likely to succeed on the merits because Mr. Imhof misappropriated confidential, proprietary, and trade secret information and, even if he had not, Mr. Imhof cannot perform the duties of his proposed employment at Delta without inevitably disclosing American's trade secret information.

**A.    Second Circuit authority supports issuing a temporary restraining order and preliminary injunction.**

A temporary restraining order ("TRO") is appropriate under Rule 65 of the

4

Federal Rules of Civil Procedure because the facts demonstrate that American will suffer immediate and irreparable injury, loss, or damage before Mr. Imhof can be heard in opposition. Fed. R. Civ. P. 65(b)(1). As further described in Mr. Stache's Declaration, American has made all possible efforts to resolve this matter without seeking court intervention, and its counsel has, per the agreement of the parties (and as described in Section C below), provided Mr. Imhof's counsel with reasonable notice under the circumstances. Delta previously relieved Mr. Imhof of all duties pending an investigation. However, Delta notified American on May 12, 2009 that Mr. Imhof will undertake his proposed employment duties at Delta within twenty-four hours. Therefore, a TRO and, after an evidentiary hearing, a preliminary injunction, is warranted to preserve the status quo and protect American's legally and contractually protectable information from disclosure until a decision is reached on the merits.

"The fundamental purpose of a preliminary injunction is to preserve the status quo in an action . . . until a decision is reached on the merits." *Heisler v. Gingras*, 238 A.D.2d 702, 703 (3rd Dep't 1997). Under Second Circuit law, to obtain a preliminary injunction, American must establish the following: "(1) irreparable harm or injury, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant." *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003)). American meets this standard, and the Court should issue a temporary restraining order (and, later, a preliminary injunction) precluding Mr. Imhof from:

> (i)  revealing any of American's confidential and proprietary information and trade secrets to Delta or any other person or entity, or otherwise violating American's Standards of Business Conduct and his written agreements;

5

(ii)    participating in meetings, either directly or indirectly, or otherwise consulting with Delta regarding:

    (a)    back-end or up front travel agency compensation programs or commission policies;

    (b)    corporate contracts or requests for proposal;

    (c)    route profitability or the initiation or discontinuance of any route;

    (d)    sales strategy, including targeted marketing segments, industries, accounts, and desired sizes of accounts;

    (e)    initiatives to generate revenue to offset rising fuel costs and the economic climate; or

    (f)    competitive strategy vis-à-vis American;

(iii)    participating in meetings or negotiations, either directly or indirectly, with travel agencies regarding their compensation programs with Delta; or

(iv)    participating in meetings or negotiations, either directly or indirectly, with corporate clients or potential corporate clients regarding contracts with Delta.

These requested categories are narrowly tailored to protect American's confidential, proprietary, and trade secret information.

1.    **The Court should presume irreparable harm because Mr. Imhof misappropriated American's confidential and proprietary information and trade secrets.**

American will suffer irreparable harm if Mr. Imhof uses or discloses the confidential, proprietary, and trade secret information that he stole. In the Second Circuit, irreparable harm may be presumed if a trade secret has been misappropriated. *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 308-09 (S.D.N.Y. 1999) (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999)). A trade secret is as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." *IBM v. Papermaster*, No. 08-

6

CV-9078, 2008 U.S. Dist. LEXIS 95516, *21 (S.D.N.Y. Nov. 21, 2008) (quoting *N. Atl. Instruments*, 188 F.3d at 44). As described in the accompanying declarations, Mr. Imhof misappropriated American's trade secret information by (1) e-mailing the New York Passenger Sales playbook to marialimhof@optononline.net on April 23, 2009,[1] and (2) downloading multiple, competitively sensitive documents to a Western Digital external drive on April 24, 2009. *See* Stache Decl. at ¶¶ 19-21, 26-29; Gandhi Decl. at ¶4. The Court, therefore, should presume irreparable harm.

2. **American will suffer irreparable harm if Mr. Imhof discloses or uses American's confidential and proprietary information and trade secrets.**

Immediate and irreparable harm also will befall American absent a TRO and preliminary injunction because Mr. Imhof inevitably will disclose American's trade secrets if he is allowed to undertake certain job duties and responsibilities on behalf of Delta. Under New York and Southern District authority, irreparable harm is established based on the inevitable disclosure of confidential, proprietary, and trade secret information, particularly where the plaintiff competes directly with the new employer and the defendant is a high-level employee who possesses highly confidential knowledge concerning marketing strategies, pricing structure, and the like. *EarthWeb, Inc.*, 71 F. Supp. 2d at 309; *Papermaster*, 2008 U.S. Dist. LEXIS 95516, at *28-29 (finding irreparable harm on the basis of inevitable disclosure); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 627 (E.D.N.Y. 1996) (applying New York law and stating that irreparable harm is established where "it is inevitable that [the former employee] will disclose important trade secrets and confidential information in [her] efforts to improve [the competitive

---

[1] Mr. Imhof knew that the information was highly confidential and not to be forwarded. In fact, when he previously sent the information to his New York sales team, he instructed them in writing not to forward the e-mail to anyone. Stache Decl. at ¶ 21.

7

business of her new employer], and aid [the] new employer and [her] own future.").[2]

Because Mr. Imhof is in possession of confidential, proprietary, and trade secret information, irreparable harm is established even if he did not misappropriate information (which he did) because his intended employment at Delta "creates a risk that disclosure of this information is inevitable." *Papermaster*, 2008 U.S. Dist. LEXIS 95516, at *22-23 (quoting *Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007)). New York courts consider the following factors in determining whether disclosure of confidential information is inevitable: "(1) the extent to which the new employer is a direct competitor of the former employer; (2) whether the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; (3) the extent to which the trade secrets at issue would be valuable to the new employer; and (4) the nature of the industry and its trade secrets." *Id.* at *23-24 (citing *Payment Alliance Int'l*, 530 F. Supp. 2d at 482; *EarthWeb, Inc.*, 71 F. Supp. 2d at 310). Thus, "where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed, where . . . the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [] marketing strategies, or the like." *Estee*

---

[2] Recently, this Court stated that the doctrine of inevitable disclosure applies in limited circumstances and "[a]bsent evidence of actual misappropriation by an employee, the doctrine should be applied in only the rarest of cases." *Metito (Overseas) Ltd. v. GE*, No. 05-Civ-9478, 2009 U.S. Dist. LEXIS 12590, at *33 (S.D.N.Y. Feb. 17, 2009). This is one of those rare cases warranting the application of the doctrine, even under the standard set forth in *Metito*. As the Court explained, the inevitable disclosure doctrine typically arises, as here, in the early stage of a case, "in the context of whether there is a sufficient risk of irreparable injury to support the issuance of a preliminary injunction." *Id.* The evidence indicates that Mr. Imhof—a high-level employee who supervised more than forty employees—was in possession of and misappropriated information in violation company policy and his confidentiality agreements.

8

*Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (internal quotation marks omitted and alterations in original).

All of these factors exist here. American and Delta are head-to-head competitors, both in the New York market and globally. Stache Decl. at ¶¶ 4-5. Mr. Imhof's intended position with Delta is nearly identical to his position at American: the highest-ranking employee in charge of New York passenger sales. Stache Decl. ¶ 8, 36. Given the similarity of his responsibilities and duties at Delta, one of American's direct competitors, it would be virtually impossible for Mr. Imhof to fulfill his job responsibilities without inevitably using and disclosing American's confidential, proprietary, and trade secret information, including those types of information listed in paragraph 9 of Mr. Stache's Declaration. The threatened injury to American requires immediate action because, once Mr. Imhof discloses American's confidential or trade secret information to American's primary competitor in the New York market, the damage done to American will be irreparable, severe, and not compensable through monetary damages alone. Indeed, if Mr. Imhof discloses any one of the types of information listed in paragraph 9 of Mr. Stache's Declaration. Mr. Imhof and Delta would have an unfair advantage.

For example, if Mr. Imhof participates in meetings and negotiations with corporate clients or travel agencies, Mr. Imhof would know and could not help but use information he learned from American (such as pricing and discounts on particular routes) that Delta otherwise would not know and that the corporate clients or travel agencies could not disclose because of their confidentiality agreements with American. Stache Decl. at ¶31. This would allow Mr. Imhof to unfairly better Delta's relationships with corporate clients and travel agencies and obtain more favorable contracts with them at a significant competitive disadvantage to American. *See, e.g.* Stache Decl. at ¶ 35. Similarly, if Mr. Imhof were allowed to participate

9

in discussions regarding Delta's routes, he could not help but offer opinions based upon

information he knows about American's route profitability. If Delta asks for and heeds

Mr. Imhof's advice regarding routes, it could undercut American's service and potentially drive

American out of that market. *See, e.g.*, Stache Decl. ¶ 45. A preliminary injunction, therefore, is

required to prevent such irreparable harm.

3.    **American is likely to succeed on the merits or has presented sufficiently
serious questions on the merits to make them a fair ground for litigation.**

Not only has American demonstrated that it likely will suffer immediate and

irreparable injury from Mr. Imhof's use or disclosure of American's confidential, proprietary,

and trade secret information, the evidence also demonstrates that American is likely to succeed

on the merits (or at least has presented sufficiently serious questions on the merits to make them

a fair ground for litigation). Mr. Imhof's actions and intended employment with Delta evidence

a breach of multiple confidentiality and non-disclosure agreements, his duty of loyalty to

American, and the common law doctrine of inevitable disclosure, which is recognized by New

York courts.[3] Similarly, Mr. Imhof's misappropriation of American's New York Passenger

---

[3] Texas law governs the confidentiality clauses in Mr. Imhof's performance share and deferred compensation agreements. However, the result under Texas law would be the same, as Texas recognizes an even less-stringent doctrine than inevitable disclosure. In Texas, "enjoining an employee from using an employer's confidential information is appropriate when it is probable that the former employee will use the confidential information for his benefit (or his new employer's benefit) or to the detriment of his former employer." *Conley v. DSC Communs. Corp.*, No. 05-98-01051-CV, 1999 Tex. App. LEXIS 1321, at *10-11 (Tex. App. Feb. 24, 1999) (emphasis in original); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App. 1993) (stating that injunctive relief is a proper remedy to protect confidential information). Texas courts recognize an employer's obligation to keep company information confidential even in the absence of an express agreement to do so. *Rugen*, 864 S.W.2d at 551 ("[I]t is well established that even without an enforceable contractual restriction a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment.") (internal quotations omitted); *T-N-T Motorsports v. Hennessey Motorsports*, 965

10

Sales strategy playbook and other competitively sensitive and trade secret documents constitutes a breach of the various confidentially and non-disclosure agreements Mr. Imhof continues to be subject to, and supports a claim of unfair competition.

a.   **Mr. Imhof's misappropriation of American's confidential, proprietary, and trade secret information violates American's Standards of Business Conduct and his written agreements.**

American is likely to succeed on its claim of misappropriation of confidential information. As a highly compensated executive of American, Mr. Imhof was bound to abide by American's Standards of Business Conduct. In fact, as recently as August 2008, Mr. Imhof certified that he was in compliance with these standards. Pursuant to the standards and his certification, Mr. Imhof acknowledged that he had access to "highly confidential proprietary information . . . [and] trade secrets -- formulas, patterns, devices, or compilations of information that are used in one's business and that give one an opportunity to obtain an advantage over competitors who do not know or use them." Moreover, he agreed that he would not use this information for his personal benefit or disclose it to third parties, including family members or future employers. Stache Decl. at ¶ 30.

Additionally, Mr. Imhof received substantial compensation in deferred compensation and performance shares since at least 2005. Each of the plans through which he

_____

S.W.2d 18, 23 (Tex. App. 1998) ("When a claim of improper disclosure or use of trade secrets arises from a confidential relationship, the injured party is not required to rely upon an express agreement that the offending party will hold the trade secret in confidence."). As the cases cited herein demonstrate, Texas courts grant injunctive relief when an employee leaves a company to work for a direct competitor if it is probable that the employee will disclose or use the employer's confidential information even in the absence of an express confidentiality agreement, and even in the absence of any evidence showing misconduct on the employee's part. Texas' "probable disclosure" standard is, in fact, a lower standard than New York's "inevitable disclosure." Therefore, if the Court were to apply Texas law, the result in this case will be the same and it should grant American the relief requested.

received this compensation required him to agree that he would not use or disclose American's confidential, proprietary, and trade secret information. Stache Decl. at ¶ 34. By forwarding highly sensitive information to the outside e-mail account, marialimhof@optonline.net, and by downloading other highly sensitive trade secret documents without American's authorization, Mr. Imhof breached these agreements. Stache Decl. at ¶ 35.

     **b.**     **American is likely to succeed on its misappropriation and breach of contract claims based upon the doctrine of inevitable disclosure.**

An injunction also is warranted because American is likely to succeed on its misappropriation and breach of contract claims based upon the doctrine of inevitable disclosure, as Mr. Imhof could not help but disclose such information in his intended employment with Delta. As discussed above, and set forth more fully in paragraph 9 of Mr. Stache's Declaration, Mr. Imhof is privy to the most sensitive and confidential information and trade secrets about American's corporate clients, travel agencies, and network and routes—information that can be used to American's competitive disadvantage. In Delta's hands, this information will allow Delta to anticipate and counteract American's actions in the market place, as well as build a strategy for Delta to target the corporate client and travel agencies that comprise American's top New York customers and one of its most valuable assets. Indeed, it is apparent that Mr. Imhof's experience working with American's customers in New York State (and elsewhere) is the exact reason he was an attractive candidate to Delta. That professional experience is completely intertwined with American's confidential and proprietary information.

Due to the directly competitive nature of American's and Delta's businesses, it is inevitable that Mr. Imhof will use American's confidential information and trade secrets. For example, less than one month before he resigned, Mr. Imhof participated in a four-hour meeting in which he was privy to significant information about American's strategies, business plans,

12

contracts with corporate clients and travel agencies, and lists of actual and prospective customers in the New York Division. Because of the almost identical nature of his intended role at Delta with his role as Managing Director New York Division Passenger Sales at American, Mr. Imhof will not be able to help but rely on that competitively sensitive information if he were permitted to work in his proposed new position for Delta and contact—and most importantly negotiate contract terms with—American's customers. *See Papermaster,* 2008 U.S. Dist. LEXIS 95516, at *33-35 (finding that the harm to the former employer will more likely derive from inadvertent disclosure of the trade secrets that had defined the employee's long career with the plaintiff because "what other base of technical know-how could [the defendant] draw upon to perform his new and important job?"); *Payment Alliance Intl,* 530 F. Supp. 2d at 482 ("[E]ven if [the defendant] acted with the best of intentions, he [might] unintentionally transmit information gained through his [former employer] during his day to day contact with his new employer.") (internal quotation marks omitted). Because Mr. Imhof is working for a direct competitor, it "would strain credulity beyond the breaking point [that he will not] consciously or unconsciously share or draw on insights" gained from his work at American. *Verizon Commc'ns Inc. v. Pizzirani,* 462 F. Supp. 2d 648, 659 (E.D. Pa. 2006) (applying New York law).

In sum, Mr. Imhof cannot "eradicate [the] trade secrets and [the] confidential information from his mind." *Lumex, Inc. v. Highsmith,* 919 F. Supp. 632, 631 (E.D.N.Y. 1996); *Bus. Intelligence Servs., Inc. v. Hudson,* 580 F. Supp. 1068, 1072 (S.D.N.Y. 1984) (where the defendant had extensive knowledge of the plaintiff's technology, the court found disclosure to be "likely, if not inevitable and inadvertent, if [the defendant] commence[d] employment with [her new employer]"). Where, as here, an employee cannot prevent himself from using the confidential information and trade secrets of his former employer in his new employment,

13

injunctive relief prohibiting even inadvertent use and disclosure of the confidential information is appropriate. *See Lumex*, 919 F. Supp. at 631; *Bus. Intelligence Servs.*, 580 F. Supp. at 1072. On these facts, American is likely to prevail on the merits of its misappropriation of confidential information and trade secrets claim, as well as its breach of contract claim against Mr. Imhof.

c.    **Mr. Imhof has breached his fiduciary duties owed to American.**

American further is likely to succeed on its breach of fiduciary duty claim against Mr. Imhof because he continued to perform his duties for American without disclosing his discussions with Delta, and because he downloaded, e-mailed, and deleted trade secret information from his computer. Under New York law, a breach of fiduciary duty claim consists of the following elements: (1) breach by a fiduciary of a duty owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 624 (S.D.N.Y. 2009) (quoting *SCS Communs., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004)). Courts recognize a fiduciary duty where an employee's "superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Id.* (citing *Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292, 2004 U.S. Dist. LEXIS 16157, at *5 (S.D.N.Y. Aug. 17, 2004) (quoting *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000)). In New York, "an employee has a common law duty of good faith and fair dealing to the employer not to exploit its confidential information for the benefit of himself and others." *Paz Sys. v. Dakota Group Corp.*, 514 F. Supp. 2d 402, 410 (E.D.N.Y. 2007) (citing *Anacomp, Inc. v. Shell Knob Servs.*, No. 93-Civ.-4003, 1994 U.S. Dist. LEXIS 223, a*12 (S.D.N.Y. Jan. 7, 1994) (observing that employees with access to employer's confidential information have been held to owe an implicit obligation of good faith and fair dealing to their

14

employer).[4]

Mr. Imhof is a fiduciary of American, not only because of the special relationship of trust and confidence reposed by American upon him, but also because of the extraordinary access provided to American's confidential, proprietary, and trade secret information. Mr. Imhof also had a duty of loyalty and of utmost good faith to American, and was obligated not to subvert or misappropriate American's proprietary and confidential information and trade secrets, assets, business, or business opportunities. Mr. Imhof breached his duties by continuing to participate in strategic meetings without informing American of his negotiations with Delta.

Furthermore, Mr. Imhof breached the duties he owed to American when he inexplicably forwarded to a personal outside e-mail account a highly sensitive document that he himself had instructed employees not to forward to anyone, and when he downloaded for his and Delta's benefit other competitively sensitive documents. For these reasons, American has shown a likelihood of success on the merits of its breach of fiduciary duty claim against Mr. Imhof or sufficiently serious questions going to the merits to make them a fair ground for litigation.

### d.    Mr. Imhof has engaged in unfair competition against American.

In New York, solicitation of an employer's customers by a former employee constitutes unfair competition where "there was wrongful conduct by the employee, such as physically taking or copying the employer's files or using confidential information." *Paz Sys.*, 514 F. Supp. 2d at 409; *Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v.*

---

[4] In addition, courts in this jurisdiction have acknowledged that the absence of an employment agreement does not entitle a present or former employee to misappropriate his employer's protected information. *See, e.g., Paz Sys.*, 514 F. Supp. 2d at 408. Thus, even in the absence of an express provision prohibiting the disclosure of such information, an employee privy to confidential information has a common law duty of good faith and fair dealing to his or her employer preventing disclosure to third parties. *Id.*

15

*Minuteman Optical Corp.*, 522 N.Y.S.2d 287, 289 (3d Dep't 1987) ("[A]n employee's illegal physical taking or copying of an employer's files or confidential information constitutes actionable unfair competition"). If an employee takes, copies, or memorizes detailed customer information, a court should enjoin the employee from using the information for his personal benefit or the benefit of a future employer. *Ecolab, Inc. v. Paolo*, 753 F. Supp. 1100, 1111 (E.D.N.Y. 1991) ("[E]ven where the information would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents, including detailed customer information by an employee for use in his future business or employment is to be enjoined as unfair competition."). Furthermore, to prevent unfair competition, New York courts have enjoined employees from soliciting a former employer's customers where the employee had memorized detailed information of the employee's customers. *See Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 391-392 (N.Y. 1972) ("If there has been a physical taking or studied copying, the court may in a proper case enjoin solicitation, not necessarily as a violation of a trade secret, but as an egregious breach of trust and confidence while in plaintiffs' service.").

As detailed previously, Mr. Imhof engaged in unfair competition by forwarding trade secret information (that he previously instructed his New York sales team not to forward) to marialimhof@optonline.net. Additionally, it appears that Mr. Imhof attempted to delete any record of this e-mail, as well as other information, from the hard drive on his company-provided laptop before returning it to American. See Gandhi Decl. at ¶¶ 6-7. Mr. Imhof's misappropriation of this information and his intended solicitation of American's customers for Delta's benefit constitute acts of unfair competition.

**4.     The threatened injury to American outweighs any hardship to Mr. Imhof.**

American has proven a likelihood of success on the merits or, at a minimum, that

16

there are sufficiently serious questions going to the merits to make them a fair ground for litigation. Moreover, the balance of the harms weighs heavily in favor of granting injunctive relief. Granting injunctive relief will not cause Mr. Imhof undue hardship. The requested injunction would not subject Mr. Imhof to obligations other than those that he expressly agreed to undertake as part of his employment with American, including American's Standards of Business Conduct and his performance share and deferred compensation agreements, pursuant to which he has gained substantial compensation in the past five years.

In contrast, without a preliminary injunction, American will suffer the loss of goodwill, business relationships, and confidential and proprietary information. American and Delta are direct competitors, and the information Mr. Imhof possess and cannot help but use would allow him and Delta to anticipate and counteract American's actions in the market place, as well as build a strategy to target certain clients, industries, businesses, and travel agencies that constitute a significant portion of American's passenger sales (and revenue) in the New York Division. Armed with that knowledge, Mr. Imhof (and Delta) would be in a position to undercut American's relationships, understand American's identified target customers, and negotiate superior contracts with current corporate customers and travel agencies. Additionally, Mr. Imhof could use his knowledge of American's route profitability and airline competitive strategy to place himself and his employer at a competitive advantage. The balance of harms, therefore, weighs in favor of a TRO and injunction.

**5.    The public interest favors granting the preliminary injunction.**

Granting the requested injunctive relief, under these circumstances, does no disservice to the public interest. American's clients will be "protected by the status quo" and will not be unfairly or unknowingly diverted from their relationship with American. To the

extent that the public interest is involved, it favors granting the injunction, not only as in recognition of the fundamental importance of contractual enforcement generally in the economic marketplace, but also specifically because New York courts permit an employer to protect its trade secrets, goodwill, and investment in their employees. That the public has an interest in the enforceability of contracts and in the protection of confidential, proprietary, and trade secret information is further evidenced by the recent federal investigation into allegations that Hilton Hotels Corporation unlawfully used confidential information misappropriated from competitor Starwood Hotels & Resorts Worldwide Inc. *See* Tamara Audi, *U.S. Probes Allegations About Hilton*, The Wall Street Journal, April 21, 2009, available at http://online.wsj.com/article/SB124032641110939349.html.

**B.    Security is not needed for the preliminary injunction.**

Although security is a condition for injunctive relief, the Court only need order the giving of security "in such sum as the Court deems proper." Fed. R. Civ. P. 65(c). This language has been interpreted as allowing the district court the discretion to find that appropriate security can be provided by a nominal injunction bond or no bond at all. *See generally*, Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2954 (1973) (interpreting Fed. R. Civ. P. 65(c)). Furthermore, because the requirement of security bond is limited only to those damages that might be incurred by Mr. Imhof as a proximate result of an improperly granted injunction, when there is no evidence that any harm would be caused by an improvident restraining order, no bond is necessary. *See Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1354 (2d Cir.) (holding that court may dispense with security requirement where no proof of likelihood of harm), *cert. denied*, 417 U.S. 932 (1974). The Court need not require any bond if it

18

finds that no harm to Mr. Imhof is likely here, as American submits would be within its discretion. *See id.*

**C.     The Temporary Restraining Order should issue without notice.**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the undersigned counsel certifies that she provided notice to counsel for Mr. Imhof and, although not required, as well as to counsel for Delta, of American's intent to file this action at approximately 8:30 a.m. on May 14, 2009 in this Court.  Specifically, the undersigned counsel spoke with counsel for Mr. Imhof at approximately 7:15 p.m. on May 13, 2009, and suggested that he meet her at the federal courthouse shortly after 8:30 a.m.  Counsel for Mr. Imhof, at that time, indicated his intent to come to the courthouse.  However, regardless of whether Mr. Imhof's counsel appears at the courthouse to argue the Complaint, the declarations, and the other papers and evidence on file demonstrate that, if Mr. Imhof undertakes his duties at Delta on May 14, 2009, as contemplated, immediate and irreparable injury, loss and damage will result to American before the adverse party can be heard in opposition.

**IV.     CONCLUSION**

For the foregoing reasons, American respectfully requests that this Court grant its request for an immediate temporary restraining order and a preliminary injunction, restraining Mr. Imhof, and any person in active concert or participation with him, from using or disclosing American's trade secrets and proprietary information to Delta or any other competitor of American.  Specifically, Mr. Imhof should be enjoined from:

(i)     revealing any of American's confidential and proprietary information and trade secrets to Delta or any other person or entity, or otherwise violating American's Standards of Business Conduct and his written agreements;

(ii)    participating in meetings, either directly or indirectly, or otherwise consulting with Delta regarding:

19

(a)    back-end or up front travel agency compensation programs or commission policies;

(b)    corporate contracts or requests for proposal;

(c)    route profitability or the initiation or discontinuance of any route;

(d)    sales strategy, including targeted marketing segments, industries, accounts, and desired sizes of accounts;

(e)    initiatives to generate revenue to offset rising fuel costs and the economic climate; or

(f)    competitive strategy vis-à-vis American;

(iii)    participating in meetings or negotiations, either directly or indirectly, with travel agencies regarding their compensation programs with Delta; or

(iv)    participating in meetings or negotiations, either directly or indirectly, with corporate clients or potential corporate clients regarding contracts with Delta.

In addition, the Court should direct Mr. Imhof to return all of American's property, including records, documents, data, and equipment, and all copies (regardless of the medium in which maintained or stored) of any such property not previously destroyed. American also requests such other relief, at law or in remedy, to which the Court may find it justly entitled, including expedited discovery before the hearing on the preliminary injunction.

20

MCKOOL SMITH P.C.

By: _____
John P. Cooney, Jr. (JC 2501)
Gayle Rosenstein Klein (GK 2945)

399 Park Avenue
Suite 3200
New York, New York  10022
Phone:  (212) 402-9400
Fax:  (212) 402-9444
gklein@mckoolsmith.com

***Of Counsel:***

MCKOOL SMITH P.C.

Mike McKool, Jr.
300 Crescent Court
Suite 1500
Dallas, Texas  79705
Phone: (214) 978-4000
Fax: (214) 978-4444
mmckool@mckoolsmith.com

***Attorneys for Plaintiff American Airlines, Inc.***

21

Dallas 277395v6